## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANDREW PERRONG, individually and on
behalf of a class of all persons and entities
similarly situated,

        Plaintiff

vs.

RUSHMORE ENERGY, LLC

        Defendant.

Case No.

CLASS ACTION COMPLAINT

## CLASS ACTION COMPLAINT

### Preliminary Statement

1.      Plaintiff Andrew Perrong ("Plaintiff"), brings this action under the Telephone

Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to

widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices.

*See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2.      Rushmore Energy, LLC ("Rushmore Energy") made a pre-recorded telemarketing

call to Mr. Perrong's residential telephone number, which is prohibited by the TCPA. Mr.

Perrong's telephone number is charged per call and making an automated and telemarketing call

to such a number is separately prohibited by the TCPA.

3.      Mr. Perrong also alleges that the Defendants violated the Pennsylvania's Unfair

Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq.* ("UTPCPL") due to their

violation of Pennsylvania's Telemarketer Registration Act, 73 P.S. § 2241 *et seq.* ("PTRA").

4.      The Plaintiff never consented to receive the call, which was placed to him for

telemarketing purposes. Because telemarketing campaigns generally place calls to hundreds of

thousands or even millions of potential customers *en masse*, the Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendant.

5.      A class action is the best means of obtaining redress for the Defendant's wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

6.      Plaintiff Andrew Perrong is a Pennsylvania resident, and a resident of this District.

7.      Defendant Rushmore Energy, LLC is a Texas limited liability company with its principal place of business in Houston, TX. The Defendant has a Registered Agent of CT Corporation, 116 Pine St., Suite 320 in Harrisburg, PA 17101. Defendant engages in telemarketing into the states which it is licensed to provide energy, including into this District, as it did with the Plaintiff. The Defendant is also registered to do business into this District.

## Jurisdiction & Venue

8.      The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

9.      Rushmore regularly engages in business in this District, including makes telemarketing calls into this District, and soliciting business from this District for its regionalized energy programs. Furthermore, Rushmore provides Pennsylvania residents with services in this District.

10.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the telemarketing calls to the Plaintiff occurred in this District.

## The Telephone Consumer Protection Act

11.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA Prohibits Automated Telemarketing Calls

12.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." See 47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A).  See 47 U.S.C. § 227(b)(3).

13.     The TCPA also makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party." See 47 U.S.C. § 227(b)(1)(B).

14.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

15.     The FCC also recognized that "wireless customers are charged for incoming calls

whether they pay in advance or after the minutes are used." *In re Rules and Regulations*

*Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order,

18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

16.     In 2013, the FCC required prior express written consent for all autodialed or

prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines.

Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed
> and be sufficient to show that the consumer: (1) received "clear and conspicuous
> disclosure" of the consequences of providing the requested consent, i.e., that the
> consumer will receive future calls that deliver prerecorded messages by or on behalf
> of a specific seller; and (2) having received this information, agrees unambiguously
> to receive such calls at a telephone number the consumer designates.[] In addition,
> the written agreement must be obtained "without requiring, directly or indirectly,
> that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,*

27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

### Pennsylvania's Unfair Trade Practices and
### Consumer Protection Law and Pennsylvania's Telemarketer Registration Act

17.     Pennsylvania's Telemarketer Registration Act, 73 P.S. § 2241 *et seq*. states:

> No telemarketer shall take any action with the primary intent:
> **(1)** to prevent the transmission of a telemarketer's name or telephone number to
> any recipient of a telephone solicitation call when the equipment or service used
> by the telemarketer is capable of creating and transmitting the telemarketer's
> name or telephone number; or

73 Pa. Stat. Ann. § 2245.1.

18.     The PTRA also provides, "[a] violation of this act is also a violation of the act of

December 17, 1968 (P.L.1224, No.387), known as the Unfair Trade Practices and Consumer

Protection Law." 73 P.S. § 2241.6(a).

19.     In fact, the UTPCPL itself prohibits "any other fraudulent or deceptive conduct

which creates a likelihood of confusion or of misunderstanding." *See* 73 P.S. § 201-2(4)(xxi).

20.     Of course, that's exactly what manipulating a Caller ID does. It obfuscates the

identity of the calling party to avoid accountability.

21.     The PTRA also prohibits any call to numbers on Pennsylvania's Do Not Call list:

> No telemarketer shall initiate or cause to be initiated a telephone solicitation call to
> a residential telephone number of a residential telephone subscriber who does not
> wish to receive telephone solicitation calls and has caused his name, address and
> telephone number to be enrolled on a do-not-call- list maintained by the list
> administrator. This prohibition shall be effective 30 days after a quarterly do-not-
> call list is issued by the list administrator which first contains a residential telephone
> subscriber's name, address and residential telephone number.

*See* 73 P.S. § 2245.2.

## The Growing Problem of Automated Telemarketing

22.     "Robocalls and telemarketing calls are currently the number one source of

consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016),

https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC

chairman).

23.     "The FTC receives more complaints about unwanted calls than all other

complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer

Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of

1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016),

https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-

consumer-protection-federal-communications-commission-

rulesregulations/160616robocallscomment.pdf.

24.     In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls,

compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National*

*Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

25.     *The New York Times* recently reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-riseillegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018), https://www.wsj.com/articles/why-there-are-so-manyrobocalls-heres-what-you-can-do-about-them-1530610203.

26.     Even more recently, a technology provider combating robocalls warned that nearly half of all calls to cell phones next year will be fraudulent. Press Release, First Orion, Nearly 50% of U.S. Mobile Traffic Will Be Scam Calls by 2019 (Sept. 12, 2018), https://www.prnewswire.com/news-releases/nearly-50-of-us-mobile-traffic-will-be-scam-calls-by-2019-300711028.html

### Rushmore's Illegal Telemarketing

27.     Rushmore is an electric generation supplier that attempts to sell their services to residents of Ohio and Pennsylvania.

28.     Rushmore uses telemarketing to promote its products.

29.     Rushmore's telemarketing efforts include the use of pre-recorded messages to send telemarketing calls.

30.     Recipients of these calls, including Plaintiff, did not consent to receive them.

31.     The Defendant used this equipment because it allows for thousands of automated calls to be placed at one time, but its telemarketing representatives, who are paid by the hour,

only talk to individuals who pick up the telephone or respond to the text contact through a telephone call.

32.      Through this method, the Defendant shifts the burden of wasted time to the consumers it calls with unsolicited messages.

### The Call to Mr. Perrong

33.      Plaintiff Perrong is a "person" as defined by 47 U.S.C. § 153(39).

34.      Plaintiff's telephone number is (215) 338-XXXX.

35.      The Plaintiff is charged for each call placed to that number.

36.      Rushmore Energy placed a telemarketing call to Plaintiff's number on March 5, 2019.

37.      A pre-recorded message was then played.

38.      The use of a pre-recorded message is a consistent with the use of an ATDS, as it would be illogical to manually call numbers only to then play a pre-recorded message.

39.      The Caller ID Number was (267) 587-1097.

40.      The Defendant is not located in Pennsylvania.

41.      Instead, the Defendant used a local Caller ID number

42.      The local Caller ID number was used to mislead call recipients into believing the call was local, so there would be a better chance that they would answer. This is also consistent with the use of an ATDS.

43.      The company was not identified in the pre-recorded message, so the Plaintiff responded to speak with a live individual.

44.      The Plaintiff was able to identify Rushmore Energy by feigning interest in the generic energy savings telemarketing pitch that was made on the call.

45.    The Plaintiff further identified Rushmore because of a letter they sent to him as a result of the call.

### Common Allegations

46.    A number of individuals have complained about energy telemarketing calls from Rushmore:

> Now its [sic] a telescammer called Rushmore Energy with [***] in the call ctr. Corporate located at 3 Sugar Creek Center Boulevard, Ste 100 or 186,Sugarland, TX 77478. CALL 800-590-7295, 281-494-3453. Managing member, Rahil Jafry. Other address P O. BOX 2640, SUGARLAND, TX, 77478....211 E. 7th St, Ste. 620, Austin, TX, 78701
>
> *Caller: RUSHMORE ENERGY*
>
> *Call type: Telemarketer*

*See* http://800notes.com/Phone.aspx/1-508-523-6101 (Last Visited March 5, 2019).

> Rushmore Energy telemarketing
>
> *Call type: Telemarketer*

> Telemarketer for electric services.
>
> *Caller: Rushmore Servies* [sic]
>
> *Call type: Telemarketer*

*See* http://800notes.com/Phone.aspx/1-215-383-3376 (Last Visited March 5, 2019).

> They call and hang up, so that you will call back...They record the conversation w/o permission. This is illegal in PA 18 Pa. Cons. Stat. § 5703. Employees are RUDE. hung up on multiple times
>
> *Caller: Rushmore Energy*
>
> *Call type: Telemarketer*

*See* http://800notes.com/Phone.aspx/1-717-409-1070 (Last Visited March 5, 2019).

47.     In fact, individuals have complained about getting calls from the same Caller ID that called the Plaintiff:

> Continuously calls and leaves no message.

https://whocallsme.com/Phone-Number.aspx/2675871097 (Last Visited March 9, 2019).

(267) 587-1097 is a Utility Scam

https://www.nomorobo.com/lookup/267-587-1097(Last Visited March 9, 2019).

48.     To the extent Rushmore contends that it obtained consent or agreement from Plaintiff and the class members for the calls at issue here, the Telemarketing Sales Rule, 16 C.F.R. § 310.5(a)(5), requires that such records be maintained.

49.     In any event, consent is an affirmative defense under the TCPA, and is unavailable unless Rushmore can show that it had prior express consent in writing, and that it has otherwise complied with all of the requirements of 47 C.F.R. § 64.1200(c)(2), including maintaining written procedures on national do-not-call rules, training personnel on national do-not-call rules, maintaining an internal do-not-call list, and accessing the national do-not-call database no more than 31 days prior to making any calls, and maintaining records documenting such access.

50.     Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up during the telemarketing calls and their privacy was improperly invaded. Moreover, these calls injured Plaintiff and the other call recipients because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of plaintiff and the class.

**Class Action Statement**

51.     As authorized by Rule 23(b)(2) and/or 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of all other persons or entities similarly situated throughout the United States.

52.     The classes of persons Plaintiff propose to represent include:

Automated Telemarketing Call Class

All persons within the United States: (a) to whom Defendant and/or a third party acting on Defendant's behalf, made one or more non-emergency telephone calls; (b) to a cellular telephone number or to a number where the recipient is charged for the call; (c) using an automatic telephone dialing system or an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of filing this Complaint to trial.

Pre-Recorded Telemarketing Call to Residential Line Class

All persons within the United States: (a) to whom Defendant and/or a third party acting on Defendant's behalf, made one or more non-emergency telephone calls; (b) promoting Defendant's products or services; (c) to a residential telephone number; (d) using an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

UTPCPL CLASS:

All Commonwealth of Pennsylvania residents (a) to whom Defendants and/or a third party acting on their behalf, made one or more telephone calls; (b) manipulating the Caller ID number or to a residential number enrolled on the Commonwealth of Pennsylvania's do-not-call- list maintained by the list administrator; (c) at any time in the period that begins six years before the date of filing this Complaint through the date of class certification.

53.     Excluded from the class are the Defendant, any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any Judge to whom this action is assigned, and any member of the Judge's staff and immediate family.

54.     The proposed class members are identifiable through phone records and phone number databases.

55.     The potential class members number in the thousands, at least. Individual joinder of these persons is impracticable.

56.     Plaintiff is a member of the proposed classes.

57.     There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following:

      a.     Whether Rushmore used pre-recorded messages to make the calls at issue;

      b.     Whether Rushmore placed telemarketing calls without obtaining the recipients' valid prior express written consent;

      c.     Whether Rushmore manipulated the Caller ID to send telemarketing calls;

      d.     Whether Rushmore's violations of the TCPA were negligent, willful, or knowing; and

      e.     Whether the Plaintiff and the class members are entitled to statutory damages because of Rushmore's actions.

58.     Plaintiff's claims are based on the same facts and legal theories as the claims of all class members, and therefore are typical of the claims of class members, as the Plaintiff and class members all received telephone calls through the same automated telemarketing process.

59.     Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the classes, he will fairly and adequately protect the interests of the classes, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

60.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient

adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Rushmore and/or its agents.

61.     The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case, and given the small recoveries available through individual actions.

62.     Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

### Count One:
### Violations of the TCPA, 47 U.S.C. § 227(b)

63.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

64.     The foregoing acts and omissions of Rushmore and/or its affiliates, agents, and/or other persons or entities acting on Rushmore's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, with a pre-recorded message to the residential telephone line of the Plaintiff and to a number for which the party is charged for the call.

65.     The foregoing acts and omissions of Rushmore and/or its affiliates, agents, and/or other persons or entities acting on Rushmore's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, with a pre-recorded message to a telephone number of the Plaintiff where he was charged for the call.

66.     As a result of Rushmore's and/or its affiliates, agents, and/or other persons or entities acting on Rushmore's behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and

members of the Class presumptively are entitled to an award of $500 in damages for each and every call made.

67.     Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Rushmore and/or its affiliates, agents, and/or other persons or entities acting on Rushmore's behalf from making calls, except for emergency purposes, to any residential number using an artificial or prerecorded voice in the future.

68.     The Defendant's violations were negligent, willful, or knowing.

**Count Two:**
**Violation of the UTPCPL**

69.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

70.     A violation of the PTRA is an automatic violation of the UTPCPL.

71.     The Defendant violated the PTRA with respect to the call to Mr. Perrong because they used technology that made their Caller ID number a non-working number that appeared to the recipient as if the call was coming from Pennsylvania.

72.     The Defendant also violated the PTRA by calling Mr. Perrong's residential number, which was on the Pennsylvania Do Not Call List.

73.     The Defendant may have further violated the PTRA, which can be identified through discovery. For example the PTRA provides, "it shall be unlawful for any telemarketer to initiate a telephone call to or receive a telephone call from a consumer in connection with the purchase of consumer goods or services, unless the telemarketer or the telemarketing business which employs the telemarketer is registered with the Office of Attorney General… at least 30 days prior to offering for sale consumer goods or services through any medium." 73 P.S. § 2241 § 3(a)-(b).

74.     The Plaintiff Perrong seeks statutory damages of $100 for each violation of the UTPCPL.

## Relief Sought

For himself and all class members, Plaintiff requests the following relief:

A.     Certification of the proposed Classes;

B.     Appointment of Plaintiff as representative of the Classes;

C.     Appointment of the undersigned counsel as counsel for the Classes;

D.     A declaration that Defendant and/or its affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E.     An order enjoining Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making calls, except for emergency purposes, to any residential number using an artificial or prerecorded voice in the future.

F.     An award to Plaintiff and the Classes of damages, as allowed by law;

G.     Leave to amend this Complaint to conform to the evidence presented at trial; and

H.     Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiff request a jury trial as to all claims of the complaint so triable.**

Plaintiff,
By Counsel,

By: _/s/ Clayton S. Morrow_

Clayton S. Morrow
Email: csm@consumerlaw365.com
Morrow & Artim, PC
304 Ross Street, 7th Floor
Pittsburgh, PA 15219
Telephone: (412) 281-1250

Dated: March 27, 2019