IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANDREW PERRONG, individually and on behalf of a class of all persons and entities similarly situated,

Plaintiff

vs.

RUSHMORE ENERGY, LLC and CJ CONSULTING, INC.

Defendants.

Case No. 2:19-cv-01367-JP

FIRST AMENDED CLASS ACTION COMPLAINT

FILED
MAY 13 2019
KATE BARKMAN, Clerk
By ____ Dep. Clerk

**FIRST AMENDED CLASS ACTION COMPLAINT**

**Preliminary Statement**

1. Plaintiff Andrew Perrong ("Plaintiff"), brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. Rushmore Energy, LLC ("Rushmore Energy") hired the co-defendant CJ Consulting, Inc. ("CJ Consulting"), who made a pre-recorded telemarketing call to Mr. Perrong's residential telephone number, which is prohibited by the TCPA. Mr. Perrong's telephone number is charged per call and making an automated and telemarketing call to such a number is separately prohibited by the TCPA.

3. The Plaintiff never consented to receive the call, which was placed to him for telemarketing purposes. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiff brings this action on

behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendants.

4. A class action is the best means of obtaining redress for the Defendants' wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

5. Plaintiff Andrew Perrong is a Pennsylvania resident, and a resident of this District.

6. Defendant Rushmore Energy, LLC is a Texas limited liability company with its principal place of business in Houston, TX. The Defendant has a Registered Agent of CT Corporation, 116 Pine St., Suite 320 in Harrisburg, PA 17101. Defendant provides energy services into this District, as it attempted to do with the Plaintiff. The Defendant is also registered to do business into this District.

7. Defendant CJ Consulting, Inc. is an Alabama domestic corporation. The Defendant has a Registered Agent of Christopher Jockisch, 150 Du Rhu Dr., 106 in Mobile, AL 36608. Defendant engages in telemarketing into the states which Rushmore is licensed to provide energy, including into this District, as it did with the Plaintiff.

**Jurisdiction & Venue**

8. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

9. Defendants regularly engage in business in this District, including making telemarketing calls into this District, and soliciting business from this District for Rushmore's

regionalized energy programs. Furthermore, Rushmore provides Pennsylvania residents with services in this District.

10. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the telemarketing calls to the Plaintiff occurred in this District.

**The Telephone Consumer Protection Act**

11. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA Prohibits Automated Telemarketing Calls

12. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

13. The TCPA also makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party." *See* 47 U.S.C. § 227(b)(1)(B).

14. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a

greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

15. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

16. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

**The Growing Problem of Automated Telemarketing**

17. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

18. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer

Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

19. In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

20. *The New York Times* recently reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-riseillegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018), https://www.wsj.com/articles/why-there-are-so-manyrobocalls-heres-what-you-can-do-about-them-1530610203.

21. Even more recently, a technology provider combating robocalls warned that nearly half of all calls to cell phones next year will be fraudulent. Press Release, First Orion, Nearly 50% of U.S. Mobile Traffic Will Be Scam Calls by 2019 (Sept. 12, 2018), https://www.prnewswire.com/news-releases/nearly-50-of-us-mobile-traffic-will-be-scam-calls-by-2019-300711028.html

**Factual Allegations**

22. Rushmore is an electric generation supplier that attempts to sell their services to residents of Ohio and Pennsylvania.

23. Rushmore uses telemarketing to promote its products.

24. However, Rushmore's contact with the potential new customers is limited, and the telemarketing is conducted by third parties, such as CJ Consulting.

25. CJ Consulting's telemarketing efforts include the use of pre-recorded messages to send telemarketing calls.

26. Recipients of these calls, including Plaintiff, did not consent to receive them.

27. The Defendants used this equipment because it allows for thousands of automated calls to be placed at one time, but its telemarketing representatives, who are paid by the hour, only talk to individuals who pick up the telephone or respond to the text contact through a telephone call.

28. Through this method, the Defendants shifts the burden of wasted time to the consumers it calls with unsolicited messages.

**The Call to Mr. Perrong**

29. Plaintiff Perrong is a "person" as defined by 47 U.S.C. § 153(39).

30. Plaintiff's telephone number is (215) 338-XXXX.

31. The Plaintiff is charged for each call placed to that number.

32. CJ Consulting placed a telemarketing call to Plaintiff's number on March 5, 2019.

33. A pre-recorded message was then played.

34. The use of a pre-recorded message is a consistent with the use of an ATDS, as it would be illogical to manually call numbers only to then play a pre-recorded message.

35. The Caller ID Number was (267) 587-1097.

36. The Defendants are not located in Pennsylvania.

37. Instead, the Defendants used a local Caller ID number

38. The local Caller ID number was used to mislead call recipients into believing the call was local, so there would be a better chance that they would answer. This is also consistent with the use of an ATDS.

39. The company was not identified in the pre-recorded message, so the Plaintiff responded to speak with a live individual.

40. The Plaintiff was able to identify Rushmore Energy by feigning interest in the generic energy savings telemarketing pitch that was made on the call.

41. CJ Consulting was not identified at any point during the call, and instead the Rushmore name was used. Rushmore later voluntarily identified CJ Consulting as the company responsible for the Plaintiff.

**Common Allegations**

42. A number of individuals have complained about energy telemarketing calls from Rushmore:

> Now its [sic] a telescammer called Rushmore Energy with [***] in the call ctr. Corporate located at 3 Sugar Creek Center Boulevard, Ste 100 or 186,Sugarland, TX 77478. CALL 800-590-7295, 281-494-3453. Managing member, Rahil Jafry. Other address P O. BOX 2640, SUGARLAND, TX, 77478....211 E. 7th St, Ste. 620, Austin, TX, 78701
>
> *Caller: RUSHMORE ENERGY*
>
> *Call type: Telemarketer*

*See* http://800notes.com/Phone.aspx/1-508-523-6101 (Last Visited March 5, 2019).

> Rushmore Energy telemarketing
>
> *Call type: Telemarketer*

> Telemarketer for electric services.

*Caller: Rushmore Servies* [sic]

*Call type: Telemarketer*

*See* http://800notes.com/Phone.aspx/1-215-383-3376 (Last Visited March 5, 2019).

They call and hang up, so that you will call back…They record the conversation w/o permission. This is illegal in PA 18 Pa. Cons. Stat. § 5703. Employees are RUDE. hung up on multiple times

*Caller: Rushmore Energy*

*Call type: Telemarketer*

*See* http://800notes.com/Phone.aspx/1-717-409-1070 (Last Visited March 5, 2019).

43. In fact, individuals have complained about getting calls from the same Caller ID that called the Plaintiff:

Continuously calls and leaves no message.

https://whocallsme.com/Phone-Number.aspx/2675871097 (Last Visited March 9, 2019).

(267) 587-1097 is a Utility Scam

https://www.nomorobo.com/lookup/267-587-1097(Last Visited March 9, 2019).

44. To the extent Rushmore contends that it obtained consent or agreement from Plaintiff and the class members for the calls at issue here, the Telemarketing Sales Rule, 16 C.F.R. § 310.5(a)(5), requires that such records be maintained.

45. In any event, consent is an affirmative defense under the TCPA, and is unavailable unless Rushmore can show that it had prior express consent in writing, and that it has otherwise complied with all of the requirements of 47 C.F.R. § 64.1200(c)(2), including maintaining written procedures on national do-not-call rules, training personnel on national do-not-call rules, maintaining an internal do-not-call list, and accessing the national do-not-call

database no more than 31 days prior to making any calls, and maintaining records documenting such access.

46. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up during the telemarketing calls and their privacy was improperly invaded. Moreover, these calls injured Plaintiff and the other call recipients because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of plaintiff and the class.

**Rushmore's Liability and its Arrangement with CJ Consulting**

47. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

48. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

49. In that ruling, the FCC instructed that sellers such as Rushmore may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many

1 *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

> cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

50. The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

51. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

FCC Rcd at 6592 (¶ 46).

52. By engaging CJ Consulting to make calls on behalf of its agents to generate new business, Rushmore "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

53. Moreover, Rushmore maintained interim control over CJ Consulting's actions.

54. For example, Rushmore controlled the states that it allowed CJ Consulting to call.

55. Furthermore, Rushmore had day-to-day control over CJ Consulting's actions, including the ability to require it to scrub against the National Do-Not-Call registry and prohibit it from using an ATDS to contact potential customers of Rushmore. Rushmore failed to make such an instruction to CJ Consulting, and as a result, is liable for CJ Consulting's conduct.

56. Rushmore also gave interim instructions to CJ Consulting by providing the volume of calling and leads it would purchase.

57. CJ Consulting transferred customer information directly to Rushmore's third party vendor, who had the ability to bind them in contract. Thus, the company that Rushmore hired has the "ability . . . to enter consumer information into the seller's sales or customer systems," as discussed in the May 2013 FCC Ruling. As such, the company that Rushmore hired is an apparent agent of Rushmore.

58. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

**Class Action Statement**

59. As authorized by Rule 23(b)(2) and/or 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of all other persons or entities similarly situated throughout the United States.

60. The classes of persons Plaintiff propose to represent include:

Automated Telemarketing Call Class

All persons within the United States: (a) to whom Defendants and/or a third party acting on Defendants' behalf, made one or more non-emergency telephone calls; (b) to a cellular telephone number or to a number where the recipient is charged for the call; (c) using an automatic telephone dialing system or an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of filing this Complaint to trial.

Pre-Recorded Telemarketing Call to Residential Line Class

All persons within the United States: (a) to whom Defendants and/or a third party acting on Defendants' behalf, made one or more non-emergency telephone calls; (b) promoting Defendants' products or services; (c) to a residential telephone number; (d) using an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

61. Excluded from the class are the Defendants, any entities in which the Defendants has a controlling interest, the Defendants' agents and employees, any Judge to whom this action is assigned, and any member of the Judge's staff and immediate family.

62. The proposed class members are identifiable through phone records and phone number databases.

63. The potential class members number in the thousands, at least. Individual joinder of these persons is impracticable.

64. Plaintiff is a member of the proposed classes.

65. There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following:

a. Whether Rushmore used pre-recorded messages to make the calls at issue;

b. Whether Rushmore placed telemarketing calls without obtaining the recipients' valid prior express written consent;

c. Whether Rushmore's violations of the TCPA were negligent, willful, or knowing; and

d. Whether the Plaintiff and the class members are entitled to statutory damages because of Rushmore's actions.

66. Plaintiff's claims are based on the same facts and legal theories as the claims of all class members, and therefore are typical of the claims of class members, as the Plaintiff and class members all received telephone calls through the same automated telemarketing process.

67. Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the classes, he will fairly and adequately protect the interests of the classes, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

68. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Rushmore and/or its agents.

69. The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case, and given the small recoveries available through individual actions.

70. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

### Count One:
### Violations of the TCPA, 47 U.S.C. § 227(b)

71. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

72. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U S.C. § 227, by making calls, except for emergency purposes, with a pre-recorded message to the residential telephone line of the Plaintiff and to a number for which the party is charged for the call.

73. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, with a pre-recorded message to a telephone number of the Plaintiff where he was charged for the call.

74. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made.

75. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making calls, except for emergency purposes, to any residential number using an artificial or prerecorded voice in the future.

76. The Defendants' violations were negligent, willful, or knowing.

**Relief Sought**

For himself and all class members, Plaintiff requests the following relief:

A. Certification of the proposed Classes;

B. Appointment of Plaintiff as representative of the Classes;

C. Appointment of the undersigned counsel as counsel for the Classes;

D. A declaration that Defendants and/or their affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E. An order enjoining Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making calls, except for emergency purposes, to any residential number using an artificial or prerecorded voice in the future.

F. An award to Plaintiff and the Classes of damages, as allowed by law;

G. Leave to amend this Complaint to conform to the evidence presented at trial; and

H. Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiff request a jury trial as to all claims of the complaint so triable.**

Plaintiff,
By Counsel,

FILED
MAY 13 2019
Clerk
Dep. Clerk

*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com
*Pro Hac Vice*

Clayton S. Morrow
Email: csm@consumerlaw365.com

Morrow & Artim, PC
304 Ross Street, 7th Floor
Pittsburgh, PA 15219
Telephone: (412) 281-1250

Dated: 5/11/2019

CERTIFICATE OF SERVICE

I hereby certify that on 5/11/2019, I filed the foregoing with the Clerk of the Court who will send notification using the CM/ECF system of such filing to all counsel of record.

*/s/ Anthony I. Paronich*
Anthony I. Paronich

FILED
MAY 1 3 2019